UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANKOR ENERGY, LLC, ET AL. | CIVIL ACTION |
| VERSUS | NO. 24-1953 |
| MERIT MANAGEMENT PARTNERS I, L.P., ET AL. | SECTION R (3) |

**ORDER & REASONS**

Before the Court is the motion of plaintiffs ANKOR Energy LLC and ANKOR E&P Holdings Corporation (collectively, "ANKOR") for attorneys' fees and costs.[1] Defendants Merit Management Partners I, L.P.; Merit Energy Partners III, L.P.; and Merit Energy Partners D-III, L.P. (collectively, "Merit") oppose the motion.[2] For the following reasons, the Court grants the motion.

## I. BACKGROUND

This dispute arises out of the operations of two federal offshore oil and gas leases: South Pelto 8 (OCS F03587) and South Pelto 13 (OCS G03171). The operations on the South Pelto 8 lease were conducted under the Operating Agreement Block 8, South Pelto Area Offshore Louisiana, dated

1 R. Doc. 68.
2 R. Doc. 69.

August 1, 1977.[3] The operations on the South Pelto 13 lease were conducted under the Operating Agreement Block 13, South Pelto Area Offshore Louisiana, dated July 1, 1975.[4]

Merit previously owned a working interest in the South Pelto 8 and 13 leases.[5] Merit acquired record title and operating rights interests in the leases in 2002 and assigned its interests in the leases to Black Elk Energy Offshore Operations, LLC ("Black Elk"), effective on January 1, 2011.[6] Black Elk later assigned its interests in the leases to Northstar Offshore Group, LLC ("Northstar"), effective on December 31, 2014.[7] Black Elk and Northstar have since filed for bankruptcy.[8]

ANKOR acquired interests in the leases on October 1, 2011,[9] and became the operator of the leases in 2012.[10] During ANKOR's time as operator of the leases, it incurred lease operating expenses. The leases terminated in 2018.[11] As part of its responsibilities as operator, ANKOR

---

3 R. Doc. 47 at 2; R. Doc. 53-1 at ¶ 4; R. Doc. 58-3 at ¶ 2.
4 R. Doc. 47 at 2; R. Doc. 53-1 at ¶ 4; R. Doc. 58-3 at ¶ 3.
5 R. Doc. 47 at 2–3; R. Doc. 1; R. Doc. 58-3 at ¶ 5.
6 R. Doc. 47 at 2–3; R. Doc. 1; R. Doc. 58-3 at ¶¶ 5–6.
7 R. Doc. 1 at ¶ 6; R. Doc. 24 at ¶ 6.
8 R. Doc. 1 at ¶ 7; R. Doc. 24 at ¶ 7.
9 R. Doc. 47 at 3.
10 R. Doc. 53-1 at ¶ 6; R. Doc. 58-3 at ¶ 8.
11 R. Doc. 53-1 at ¶ 12; R. Doc. 58-3 at ¶ 38.

Energy performed decommissioning operations, for which it incurred decommissioning expenses.[12]

In previous orders, the Court found that Merit breached its duties to ANKOR by failing to pay its share of both the lease operating expenses and the decommissioning expenses.[13] ANKOR now moves to recover attorneys' fees and costs incurred in its litigation against Merit. ANKOR seeks $451,918.52 in attorneys' fees and $11,026.49 in costs.[14] The Court considers the motion below.

## II. GOVERNING LAW

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). In this case, a Louisiana contract supplied the rule of decision, so Louisiana law governs the Court's consideration of ANKOR's motion for attorneys' fees.

## III. DISCUSSION

### A. Entitlement to Attorneys' Fees

"[A]ttorney fees are not allowed except where authorized by statute or contract." *Dep't of Transp. & Dev. v. Williamson*, 597 So. 2d 439, 441 (La.

---

12 R. Doc. 32-5 at ¶ 10.
13 R. Doc. 63; R. Doc. 47.
14 R. Doc. 68 at 1.

1992). ANKOR argues that the operating agreements governing the South Pelto leases authorize ANKOR to recover attorneys' fees in an action brought to collect delinquent payments. ANKOR cites provision I.3 in Exhibit A to the operating agreement for South Pelto Block 8,[15] which states:

> **3. Advances and Payments by Non-Operators**
>
> A. Unless otherwise provided for in the Agreement, the Operator may require the Non-Operators to advance their share of estimated cash outlay for the succeeding month's operation within thirty (JO) days after receipt of the billing or by the first day of the month for which the advance is required, whichever is later. Operator shall adjust each monthly billing to reflect advances received from the Non-Operators.
>
> B. Each Non-Operator shall pay its proportion of all other bills within thirty (30) days after receipt.
>
> C. Subject to Paragraph 3A and 3B of this Section I, if payment is not made as required, the unpaid balance shall bear interest monthly at the rate of twelve percent ( 12 % ) per annum or the maximum contract rate permitted by the applicable usury laws of the jurisdiction in which the Joint Property is located, whichever is the lesser, plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts.[16]

---

15 R. Doc. 68-2 at 2.

16 R. Doc. 35-6 at 75.

The operating agreement for South Pelto Block 13 also includes an Exhibit A with an identical provision I.3.[17]

The Court found in its Order of November 21, 2025, that provision I.3.B requires Merit, as a non-operator, to pay "all other bills," which include bills for operating and decommissioning expenses.[18] The Court found in that Order and in its Order of April 30, 2026, that Merit did not make the payments it owed.[19] Merit's failure to pay triggers provision I.3.C, which applies "if payment is not made as required."[20] As a result, Merit owes ANKOR not only "the unpaid balance" but also "interest . . . plus attorney's fees."[21] By its clear terms, provision I.3.C entitles ANKOR to attorneys' fees.

Merit's arguments against this finding are meritless. First, Merit argues that the operating agreements permit recovery of attorneys' fees only for the collection of unpaid "joint interest billings," which do not include bills for operating costs and decommissioning expenses.[22] But provision I.3 permits recovery of attorneys' fees when payment is not made on "all other bills"; the provision does not mention "joint interest billings."

17 R. Doc. 35-7 at 66.
18 R. Doc. 47 at 24.
19 *Id.*; R. Doc. 63.
20 R. Doc. 35-6 at 75; R. Doc. 35-7 at 66.
21 *Id.*
22 R. Doc. 69 at 2.

Second, Merit argues that ANKOR has brought this action on behalf of non-operators and that the operating agreements do not provide for recovery of attorneys' fees on behalf of non-operators.[23] But ANKOR was entitled to bring this action to recover payments owed by Merit to ANKOR for decommissioning expenses. In addition, non-operators were forced by the delinquency of Merit's assignees to cover the assignees' shares of the lease operating expenses.[24] As the Court found in its order on summary judgment for lease operating expenses, Merit is liable for its assignees' delinquency.[25] Article VI of the operating agreements empowered ANKOR to recover this delinquent share of operating expenses on behalf of non-operators.[26] *See In*

---

23 *Id.*

24 R. Doc. 62 at 16–17.

25 R. Doc. 63.

26 Article VI reads in relevant part:

> Upon the payment by such delinquent or defaulting Non-Operator to Operator of any amount or amounts on such delinquent indebtedness, or upon any recovery on behalf of the Parties under the lien conferred above, the amount or amounts so paid or recovered shall be distributed and paid by Operator to the Non-Operators proportionately in accordance with the contributions theretofore made by them.
>
> If any Party fails to advance funds or pay bills in the amounts within the time period provided for in this Article VI and in Article V, Operator . . . may at its election, place such Party in default by giving written notice to the other Parties of such default, containing a statement of such default. If the defaulting Party fails to remedy its default within ninety (90) days after receipt of written notice, the

*re Northstar Offshore Grp., LLC*, No. 16-34028, 2024 WL 2888494, at *5 (Bankr. S.D. Tex. June 7, 2024) (holding that Article VI grants the operator, ANKOR Energy, the exclusive right to pursue claims against delinquent non-operators on behalf of other non-operators). Provision I.3.C adds attorneys' fees to the amount of a delinquent non-operator's unpaid balance without regard to the identity of the party seeking to collect that balance; in other words, any party entitled to collect unpaid bills is entitled to attorneys' fees. The balance now includes attorneys' fees. That it is ANKOR rather than a non-operator that is seeking to recover the balance due to the non-operators is of no consequence. ANKOR is entitled to collect the balance.

**B. Amount of Attorneys' Fees**

Under Louisiana law, "attorney fees must be reasonable. The amount is regulated by the Rules of Professional Conduct." *Childers v. Laurel Lakes Ests. Homeowners Ass'n, Inc.*, 380 So. 3d 46, 54 (La. App. 1 Cir. 2023) (citation modified). Rule 1.5(a) of the Louisiana Rules of Professional Conduct provides the following factors to determine the reasonableness of attorneys' fees:

---

> Party giving such notice shall at its option [ ] take the necessary action to collect the amount due plus interest, damages, and costs.

R. Doc. 35-6 at 9–10.

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

The Court need not expressly consider all the factors and may multiply the number of hours worked by an hourly rate the Court deems reasonable. *See Fourchon Docks, Inc. v. Milchem Inc.*, 849 F.2d 1561, 1568 (5th Cir. 1988).

Here, the Court finds ANKOR's requested amount of attorneys' fees to be reasonable. ANKOR has calculated this amount by multiplying the number of hours worked by its attorneys on this case by their respective hourly rates. These rates are in line with New Orleans market rates for similarly experienced attorneys. The parties litigated this case for two years.

The case involved complex legal analysis and required plaintiff to defend against a motion to dismiss and a motion for summary judgment and to file three motions for partial summary judgment (one on liability for decommissioning expenses, one on quantum of decommissioning expenses, and one on lease operating expenses). In addition, ANKOR's attorneys secured a significant monetary award for their clients (nearly $6.5 million), and the attorneys' fees ANKOR seeks to recover ($451,918.52) are not out of proportion to that award. These fees amount to only approximately 7% of the award ANKOR's counsel secured. *See, e.g.*, *Hobbs v. EVO Inc.*, 7 F.4th 241 (5th Cir. 2021) (upholding a district court's award of $240,588 in attorneys' fees, which amounted to 134% of the $179,374 recovered in damages) (applying federal law); *Williamson*, 597 So. 2d at 443 (finding $175,000 in attorneys' fees—17% of the total award—reasonable where counsel secured $1,021,171 for their clients).

Neither of the arguments Merit raises against this amount has merit. First, Merit argues that it would be duplicative for the Court to award attorneys' fees both to the operator (ANKOR) and to non-operators. But ANKOR does not seek an award of attorneys' fees to non-operators. ANKOR itself has brought this case, and ANKOR itself has incurred attorneys' fees. These are the fees it seeks to collect.

Second, Merit argues that the requested fees are excessive because many of the hours billed by ANKOR's attorneys involved review and production of documents in ANKOR's own possession for the purpose of proving the amount Merit owed ANKOR. But Merit provides neither rationale nor legal authority to explain why attorney time should be discounted when spent either (1) reviewing a party's own documents or (2) attempting to prove the extent of injury—an essential element of a plaintiff's claim. Merit also does not identify any time entries it believes should be stricken, nor does Merit suggest an award of attorneys' fees it believes would be reasonable. The Court therefore has no reason to reduce the amount requested by ANKOR.

**C. Costs**

Merit does not contest the amount of costs requested by ANKOR, and ANKOR has provided evidence to substantiate its claim to this amount. The Court therefore grants ANKOR's motion for $11,026.49 in costs.

The Court notes that Exhibit A-3 to plaintiff's motion shows ANKOR's costs to be $11,926.49, not $11,026.49.[27] If ANKOR seeks to recover the $900 discrepancy, it must file a supplemental motion.

---

27 R. Doc. 68-6 at 3.

## IV. CONCLUSION

For the foregoing reasons, the Court **ORDERS** Merit to pay ANKOR $451,918.52 in attorneys' fees and $11,026.49 in costs.

New Orleans, Louisiana, this __10th__ day of November, 2026.

Sarah Vance
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE